UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NICHOLAS RHODES,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE L. MARLETTE and LAW OFFICES OF GEORGE LANE MARLETTE, PC,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 1:26-cv-12017-IT |

MEMORANDUM & ORDER

November 3, 2026

TALWANI, D.J.

In this action, Plaintiff Nicholas Rhodes, proceeding *pro se*, challenges Defendants George L. Marlette and Law Offices of George Lane Marlette, P.C.'s attempts to collect fees from Rhodes for services performed by Defendant Marlette following his appointment by the Barnstable Probate and Family Court as a Guardian ad Litem ("GAL") in the custody and divorce matter of Cassandra Rhodes vs. Nicholas Rhodes, No. BA23D0105DR (Mass. Pro. & Fam. Ct. Feb. 6, 2026). Rhodes alleges that Defendants' actions violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), constituted wire fraud under 18 U.S.C. § 1343 and mail fraud under 18 U.S.C. § 1341, deprived Plaintiff of his civil rights under 42 U.S.C. § 1983, and violated the Fair Debt Collection Practices Act under 15 U.S.C. § 1962 et seq. Plaintiff further brings claims under Massachusetts common law for fraud, invasion of privacy, and abuse of process, as well as for a "violation of HIPAA." Am. Compl. ¶ 5.35 [Doc. No. 10]. Plaintiff seeks compensatory and punitive damages as well as injunctions prohibiting Defendant Marlette from, among other things, sending further "fraudulent" invoices

to Plaintiff, making "false" claims of authority with respect to Plaintiff, and accessing Plaintiff's confidential records. Id. at 24–25.

Pending before the court is Defendants' Motion to Dismiss [Doc. No. 18] under Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of Plaintiff's Amended Complaint [Doc. No. 10] on the ground that the doctrine of quasi-judicial immunity extends to GALs and bars the Plaintiff's claims as a matter of law. Mot. to Dismiss 1 [Doc. No. 18]. Defendants additionally assert that the litigation privilege bars Plaintiff's claims. Id. Also pending is Rhodes's Motion for Sanctions [Doc. No. 28] under Federal Rule of Civil Procedure 11(c)(2), in which Rhodes argues that Defendants' Motion to Dismiss [Doc. No. 18] and Memorandum in Support of Motion to Dismiss [Doc. No. 19] "rel[y] upon, incorporate[], and attempt[] to legitimize fraudulent materials and misrepresentations previously introduced to subvert the judicial process." Pl. Mot. for Sanctions ¶ 2 [Doc. No. 28].[1]

For the following reasons, the court finds that Plaintiff's Motion for Sanctions [Doc. No. 28] is without merit where it seeks to challenge state court orders in the wrong forum and that Plaintiff's complaint has failed to state a claim upon which relief may be granted.

---

[1] Plaintiff alleges specifically that Defendants' Motion and Memorandum:

> rely directly upon physical exhibits—specifically, the Barnstable Probate & Family Court "Assented-To" motion dated January 29, 2024, and a subsequent motion requesting approval for "Additional Hours for GAL Investigation" dated February 11, 2024 and filed February 14, 2024, which is a direct byproduct of the "Assented-To" motion. Both documents were obtained through explicit fraud, material misrepresentations, and a calculated scheme that misled the state court and compromised the integrity of the record.

Id. at ¶ 3.

## I. Background Based on the Record Before the Court

Nicholas Rhodes was a party in the custody and divorce matter of Cassandra Rhodes vs. Nicholas Rhodes, No. BA23D0105DR (Mass. Pro. & Fam. Ct. Feb. 6, 2026), where the Probate and Family Court appointed George L. Marlette as GAL. Pl. Mot. for Sanctions Ex. F [Doc. No. 28-6] ("Appointment Order"). On September 29, 2023, Marlette formally accepted his appointment. Am. Compl. ¶ 4.1 [Doc. No. 10]; Acceptance of GAL Appointment, Pl. Mot. for Sanctions Ex. G [Doc. No. 28-7].

The Appointment Order authorized Marlette to report to the court on the issues of custody, domestic violence, parenting plan, and parental alienation, and to "make such recommendations as deemed appropriate and in the best interests of the child(ren)" as to those issues. Appt. Order 1 [Doc. No. 28-6]. The Appointment Order instructed the GAL to investigate and reference a wide range of factors, including but not limited to social history, marital and parenting history, health, interests, age, and education of the children, the relationships of the parents and the children, and each parent's capacity to support the children. Id. at 2. The Appointment Order additionally granted Marlette the authority as GAL to "contact any or all persons having relevant knowledge regarding any family member," to interview the parties and the children, and to "interview additional collaterals important to the evaluation/investigation in the GAL's discretion." Id. The Appointment Order further specified that the GAL's fees were to be paid equally by the parties. Id. at 3.

The Appointment Order required the GAL's "evaluation/investigation and report" to be concluded in no more than 35 hours, and stated that "[a] request for additional hours must be presented by motion and may be allowed for good cause shown." Am. Compl. ¶ 4.1 [Doc. No. 10]; Appt. Order 1 [Doc. No. 28-6]. The Appointment Order further specified that the GAL's final report was to be published no later than November 17, 2023, and that, "[i]n the event

additional time is necessary, the GAL shall file a motion in advance of the original due date for permission for additional hours and/or extension of due date." Appt. Order 3 [Doc. No. 28-6].

On January 29, 2024, Marlette emailed Rhodes's counsel in the divorce proceeding, requesting assent to an enlargement of time retroactive to November 17, 2023. Pl. Mot. for Sanctions Ex. A [Doc. No. 28-1]. In his email, Marlette stated:

> When I attempted to secure information and a collateral interview at [Justice Resource Institute], staff there refused to speak about the matter until review by their counsel. Their Attorney saw an original report due date of November 17, 2023, and incorrectly assumed that my appointment ended. He has asked I seek an enlargement of time, Nunc pro tunc, November 17, 2023, so that he will feel confident I am still the GAL. I am reaching out to you for your assent. If you authorize me to sign your name, please Email reply with authorization.

Id. Rhodes's counsel responded ten minutes later, "Yes, you may sign my name to your Motion. I appreciate your hard work throughout this process." Id.

That same day, Marlette filed the motion, captioned "Assented To Motion for Enlargement of the Time for Submission of GAL Report, Nunc pro tunc November 17, 2023," seeking an enlargement of time to February 7, 2024, to complete his report. Def. Mem. ISO Mot. to Dismiss Ex. 2 [Doc. No. 19-2] ("Motion to Enlarge Time"); Pl. Mot. for Sanctions Ex. B [Doc. No. 28-2] (same). The Motion to Enlarge Time stated:

> When I contacted Justice Resource Institute to schedule an appointment for the collateral interviews, I learned that through mistake and inadvertence, I did not seek an enlargement of the time to file my report when the case was last continued. Therefore, counsel for JRI asked for confirmation I was still authorized to investigate and interview collaterals in the matter.

Mot. to Enlarge Time 1 [Doc. No. 19-2]. The Probate and Family Court allowed the Motion to Enlarge "nunc pro tunc 11.17.23." Id.

On February 11, 2024, Marlette filed a motion seeking approval of additional hours for the GAL Investigation. Def. Mem. ISO Mot. to Dismiss Ex. 3 [Doc. No. 19-3] ("Mot. to

Approve"); Pl. Mot. for Sanctions Ex. C [Doc. No. 28-3] (same). The motion argued that there was good cause for the additional hours because, *inter alia*,

> [t]he parties reasonably informed the GAL of many collaterals who had relevant information to share concerning the complexities of the children's needs and the overall family dynamic. While the order contemplates each side presenting GAL with 3 collaterals, a total of 22 were interviewed in this case.

Id. The Probate and Family Court allowed the Motion to Approve. Id.

On March 2, 2024, Defendants submitted an invoice in the Probate and Family Court action seeking payment from Nicholas and Cassandra Rhodes for 53.10 hours of work. Am. Compl. ¶ 4.7; Compl. Ex. 1, at 11 [Doc. 1-3]. The invoice lists services rendered between October 9, 2023, and February 6, 2024, by date, with a description of the services performed, hours, rate, and total amount charged. Compl. Ex. 1, at 6–11 [Doc. No. 1-3].

On March 16, 2024, Marlette emailed Rhodes seeking payment of the unpaid balance of fees for Marlette's services. Am. Compl. ¶ 4.12 [Doc. No. 10]; Am. Compl. Ex. 1, at 3 [Doc. No. 10-1]. On March 18, 2024, when Marlette had not received payment, he filed a Complaint for Civil Contempt in the Probate and Family Court. Am. Compl. Ex. 1, at 6 [Doc. No. 10-1]. In subsequent months, Marlette made multiple filings in Barnstable Probate and Family Court seeking continued relief and payment of his GAL fees. Am. Compl. ¶¶ 4.41–4.46 [Doc. No. 10]. On October 4, 2024, the court entered Judgment for Marlette and against Nicholas and Cassandra Rhodes on the Complaint for Civil Contempt. Def. Mem. ISO Mot. to Dismiss Ex. 5 [Doc. No. 19-5].

On November 13, 2025, Nicholas and Cassandra Rhodes filed a Stipulation of Dismissal, seeking dismissal of the divorce proceedings and other relief. Def. Mem. ISO Mot. to Dismiss Ex. 6 [Doc. No. 19-6]. On February 3, 2026, the Probate and Family Court dismissed the divorce petition with Nicholas and Cassandra Rhodes's mutual assent but denied the additional relief

sought by Nicholas and Cassandra Rhodes, noting that "[t]he parties cannot simply agree . . . to extinguish prior Judgments . . . such as the October 24, 2024 Contempt Judgment [] and accompanying Stipulation of the parties [] which obligated the parties to pay the GAL's fees." Id. at 2.

## II. Motion for Sanctions

In moving for sanctions, Plaintiff effectively asks the court to invalidate two orders of the Probate and Family Court which Defendants rely on for their assertion of quasi-judicial immunity. See Pl. Mot. for Sanctions ¶ 2 [Doc. No. 28]. As Defendants correctly argue, the Rooker-Feldman[2] doctrine bars such a motion. See Def. Opp. to Mot. for Sanctions 4–5 [Doc. No. 30]. Under the Rooker-Feldman doctrine, lower federal courts are barred from hearing de facto appeals from state-court judgments. See generally Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); D.C. Ct. App. v. Feldman, 460 U.S. 462 (1983); Wilson v. Shumway, 264 F.3d 120 (1st Cir. 2001). The doctrine bars plaintiffs from coming to federal court "complaining of an injury caused by the state-court judgment," or seeking relief "predicated upon a conviction that the state court was wrong." Tyler v. Supreme Judicial Court of Massachusetts, 914 F.3d 47, 50 (1st Cir. 2019). This is because only the United States Supreme Court, and not the lower federal courts, has jurisdiction over appeals of final state court judgments. Rooker, 263 U.S. at 420; Feldman, 460 U.S. at 469; Davison v. Gov't of P.R. – P.R. Firefighters Corps., 471 F.3d 220, 223 (1st Cir. 2006) ("[T]he proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment.").

---

[2] The term "Rooker-Feldman doctrine" is a shorthand reference to the Supreme Court's interpretation of 28 U.S.C. § 1257 in District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

Plaintiff claims that Defendants' Motion to Dismiss [Doc. No. 18] "relies upon, incorporates, and attempts to legitimize fraudulent materials and misrepresentations previously introduced to subvert the judicial process." Pl. Mot. for Sanctions ¶ 2 [Doc. No. 28]. But this court may not entertain Plaintiff's challenge to the state court orders. To the extent that Plaintiff contests the legitimacy and merits of the orders of the Probate and Family Court, his sole remedy was to seek reconsideration in that court or to appeal the relevant orders in state court. Accordingly, Plaintiff's Motion for Sanctions [Doc. No 28] is DENIED.

## III. Motion to Dismiss

### A. *Standard of Review*

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss, a judge can consider "documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice." Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)); see also Clorox Co. P.R. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000) (finding a district court "may

properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint" in ruling on a Rule 12(b)(6) motion) (internal quotations omitted). However, "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993) (internal quotations and original alterations omitted) (collecting cases). This exception applies to documents filed in other courts, including state courts. See E.I. Du Pont de Nemours & Co., Inc. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986) ("Federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (quoting St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir.1979)).

In general, a complaint filed *pro se* is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). That does not mean that *pro se* plaintiffs need not plead facts sufficient to state a claim, but it does afford them some leniency when facing a motion to dismiss. See Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980).

B. *Discussion*

Defendants assert that Plaintiff's claims are barred as a matter of law under the doctrine of quasi-judicial immunity. Def. Mem. ISO Mot. to Dismiss, 3 [Doc. No. 19]. Under Massachusetts law, judges are entitled to judicial immunity for "any judgment or decision rendered in the exercise of jurisdiction vested by him or her by law." Hornibrook v. Richard, 488 Mass. 74, 78, 171 N.E.3d. 725 (2021) (internal quotations omitted). Long recognized at common

law, judicial immunity establishes as "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." Stump v. Sparkman, 435 U.S. 349, 355 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1872)).

The doctrine has been extended beyond just judges to include other persons performing quasi-judicial functions, including GALs. Hornibrook, 488 Mass. at 79 (citing Sarkisian v. Benjamin, 62 Mass. App. Ct. 741, 745, (2005)). In Sarkisian, the Massachusetts Appeals Court specifically held that "the guardian ad litem acts as an arm of the court and is an integral part of the judicial process . . . As such, a guardian ad litem in that capacity should be entitled to absolute immunity in order to enable the guardian ad litem to act freely without the threat of personal liability." 62 Mass. App. Ct. at 745 (internal citations omitted). The First Circuit has similarly held that GALs have "absolute quasi-judicial immunity for those activities integrally related to the judicial process." Cok v. Cosentino, 876 F.2d. 1, 3 (1st Cir. 1989). This immunity fails to attach "only when such persons perform acts which are clearly outside the scope of their jurisdiction." Id. The First Circuit in Cok clarified that even allegations of malice, bad faith, or a claim of conspiracy would not strip a quasi-judicial officer of their immunity; instead, courts may look for "allegations of theft or personal profiteering, or that any of their acts were taken without the sanction of the family court." Id. at 3–4.

1. Defendant Marlette's Appointment as a Guardian Ad Litem

Given that GALs are clearly subject to quasi-judicial immunity, to state a claim against Defendant, Plaintiff must plead facts demonstrating that Defendant either was not a valid court-

appointed GAL or that he exceeded his judicial authority in acting as a GAL. Plaintiff has failed to do so.

Plaintiff concedes that Defendant Marlette was appointed as a "Category F Guardian Ad Litem" by the Probate and Family Court through November 17, 2023. Am. Compl. ¶ 4.1 [Doc. No. 10]. Plaintiff contends, however, that Defendant Marlette falsely represented his authority as a court-appointed GAL between December 7, 2023, and February 5, 2024. See Am. Compl. ¶¶ 4.22–4.33 [Doc. No. 10]. Plaintiff's RICO, federal wire fraud, and federal mail fraud claims allege that Defendants' attempts to collect payment for work performed during this period were therefore also fraudulent due to Marlette's alleged misrepresentation of his GAL authority. See Am. Compl. ¶¶ 5.1–5.34 [Doc. No. 10]. Plaintiff's claims for "Fraud (Massachusetts Common Law)" and "Violation of HIPAA / Common Law Invasion of Privacy" are likewise based on the same alleged "false representations of material fact . . . that the Defendant possessed a 'court-appointed GAL authority.'" Id. ¶ 5.36. Plaintiff's claims for "Abuse of Process (Massachusetts Common Law)," Fair Debt Collection Practices Act violations, "Deprivation of Civil Rights" under § 1983, and unjust enrichment are rooted in allegedly false representations that Defendant Marlette made to the Probate and Family Court between February 14, 2024, and October 4, 2024, while Defendant Marlette sought to collect the invoiced amounts. Id. ¶¶ 4.39–4.48; 5.44–5.47. Therefore, the fundamental issue is whether Plaintiff pleaded facts demonstrating that Defendant Marlette was *not* a validly appointed GAL between December 7, 2023, and February 5, 2024.

On January 29, 2024, the Probate and Family Court allowed Defendant Marlette's Motion to Enlarge to February 7, 2024, "nunc pro tunc 11.17.23." Mot. to Enlarge Time 1 [Doc.

No 19-2]. That nunc pro tunc notation made the Probate and Family Court order effective November 17, 2023, and continued the appointment as GAL through February 7, 2024.

Therefore, for the duration of the relevant time period and the conduct complained of by Plaintiff, Defendant Marlette was a duly appointed GAL acting "as an arm of the court" and subject to quasi-judicial immunity. See Sarkisian, 62 Mass. App. Ct. at 745.

2. Defendant Marlette's Conduct as a Guardian Ad Litem

Having determined that Defendant Marlette possessed quasi-judicial immunity as a validly appointed GAL, the court finds that Plaintiff's pleadings fail to show that Defendant Marlette's actions "were taken in clear and complete absence of authority." See Cok, 876 F.2d at 3. Massachusetts law authorizes "[a]ny judge of a probate court [to] appoint a guardian ad litem to investigate the facts of any proceeding pending in said court relating to or involving questions as to the care, custody or maintenance of minor children and as to any matter involving domestic relations . . . [and] report in writing to the court the results of the investigation." Mass. Gen. Laws ch 215 § 56A. Here, the Probate and Family Court appointed Defendant Marlette as GAL "to report to the Court on the issue(s) of: custody, domestic violence, parenting plan, [and] parental alienation[.]" Compl. Ex. 1, at 2 [Doc. No. 1-3]. The appointment further specified that "[t]he GAL shall have the authority to: contact any or all persons having relevant knowledge regarding any family member . . . consult with any professional having specialized knowledge . . . [and] meet with children at their respective schools or outside of the home." Id. at 2–3. So long as Defendant acted within the scope of this express authority, regardless of Plaintiff's satisfaction with the work performed, he was therefore subject to quasi-judicial immunity. See Hornibrook, 488 Mass. at 79–81; Cok, 876 F.2d. at 3–4.

Plaintiff alleges that Defendant Marlette "falsely represented . . . that he possessed 'a court appointed authority as a GAL investigator'" to law enforcement officers, an Assistant District Attorney, mental health clinicians, a school administrator, a private defense attorney, and a state DCF employee. Am. Compl. ¶¶ 4.22–4.33 [Doc No. 10]. Speaking to such individuals and accessing the records in their possession is precisely the type of conduct that a GAL is authorized to undertake as part of their court-appointed duty. See Mass. Gen. Laws ch. 215 § 56A; Compl. Ex. 1, at 2–3 [Doc. No. 1-3]. Defendants' invoice provides an even more detailed and comprehensive account of the activities Marlette conducted in his role as a GAL. See Compl. Ex. 1, at 6–11 [Doc. No. 1-3]. The invoice demonstrates that Defendant Marlette met and communicated with family members, law enforcement officers, attorneys, health care providers, and DCF staff members and drafted a final report for consideration by the Court. Id. Rather than meeting the high bar of theft or personal profiteering required to avoid quasi-judicial immunity, the facts that Plaintiff himself complains of are entirely consistent with the duties that the court appointed him to perform. See Cok, 876 F.2d at 3.[3]

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Sanctions [Doc. No. 28] is DENIED, Defendants' Motion to Dismiss [Doc. No. 18] is GRANTED, and the Amended Complaint [Doc. No. 10] is dismissed.

IT IS SO ORDERED.

November 3, 2026

/s/ *Indira Talwani*
United States District Judge

---

[3] The court does not reach Defendants' further argument that Plaintiff's claims are also barred by the litigation privilege.